# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURCH,[1] GALLAGHER, and HAIGHT
Appellate Military Judges

## UNITED STATES, Appellee
v.
## Sergeant First Class WILLIAM S. HARTGROVE
## United States Army, Appellant

ARMY 20100743

Headquarters, United States Army Alaska
Kwasi Hawks, Military Judge (arraignment & motions hearing)
Mark Bridges, Military Judge (trial)
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant: Mrs. Anita Gorecki-Robbins, Esquire (argued); Captain Matthew T. Grady, JA; Ms. Cate O'Callahan, Esquire (on brief); Captain James F. Ingram, JA.

For Appellee: Captain Campbell Warner, JA (argued); Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA (on brief).

13 February 2013

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

GALLAGHER, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of aggravated sexual contact with a child, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 120 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for twelve years, and reduction to the grade of E-1. The convening authority deferred automatic forfeitures and the adjudged reduction until action. At action, the convening authority approved the adjudged sentence. This case is before this court for review pursuant to Article 66, UCMJ.

---

[1] Chief Judge BURCH took final action in this case while on active duty.

We have considered the entire record of trial, the submissions of the parties, the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and oral argument. We find appellant's assignment of error merits discussion but no relief.

**FACTS**

Agents from the Criminal Investigation Division (CID) began investigating appellant based on an allegation that appellant sexually abused his daughter. An agent from CID, speaking to appellant's commander, requested that appellant be given a twenty-four hour no-contact order and set an appointment for appellant to go to CID the next morning. In response, First Sergeant (1SG) ML contacted appellant and ordered him to report to the barracks instead of his on-post residence. Upon arriving at the barracks, appellant was given an order not to contact his wife and children for twenty-four hours by the commander. In response to appellant's inquiry about what was going on, 1SG ML informed appellant that he did not know, "except there was some kind of allegation against him." The unit chaplain was then contacted to speak with appellant because he appeared upset. Other than the no-contact order, appellant was not under any other form of restraint or restriction.

On the morning of 26 March 2010, appellant reported to 1SG ML's office to be escorted to the CID office for questioning. At this time, through interaction between appellant's wife and 1SG ML's wife, 1SG ML was aware appellant was suspected of misconduct involving at least appellant's daughter, however, neither appellant nor 1SG ML were aware of the "exact charges" against appellant. Observing that appellant was distraught, 1SG ML asked appellant "how he was doing." Appellant responded that he was doing okay. Appellant revealed he had spoken to his mother and he would not make a statement to CID before consulting a lawyer. First Sergeant ML then told appellant "that if he wanted to talk about it 'professionally, or man to man,' he [the 1SG] was available." Appellant responded by saying "thank you" and was quiet for "several minutes" during which time 1SG ML checked email. After a "few more minutes" appellant and 1SG ML left the office, got into 1SG ML's truck and proceeded to CID. While en route to CID, appellant spontaneously related that while he and his wife were "sexually estranged," he had "taken his daughter's innocence." Appellant said "he had not penetrated his daughter but touched her in an inappropriate sexual" manner. First Sergeant ML was shocked and exclaimed "What." First Sergeant ML "took no other action to explicitly question appellant" and continued driving. Upon arriving at CID, 1SG ML reported appellant's statement to CID.

Appellant and 1SG ML did not have a "prior personal friendship." First Sergeant ML felt appellant "was an excellent duty performer." First Sergeant ML's "initial inquiries towards the accused and his legal situation were motivated by a genuine attempt to provide moral support for a soldier under his supervision."

Among other things, 1SG ML "had a mild concern that if the soldier felt isolated he would be at a higher risk for suicide, an outcome the 1SG sought to avoid personally and professionally."

## LAW

"We review a military judge's ruling on a motion to suppress for abuse of discretion." *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (citing *United States v. Monroe*, 52 M.J. 326, 330 (C.A.A.F. 2000)). "In reviewing a military judge's ruling on a motion to suppress, we review fact finding under the clearly-erroneous standard and conclusions of law under the de novo standard." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). "Thus on a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.* The abuse of discretion standard calls "for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

Article 31(b), UCMJ, provides "[n]o person subject to [the UCMJ] may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial." Statements obtained in violation of Article 31(b), UCMJ, are "involuntary" and, with certain exceptions not applicable here, are not admissible into evidence against the accused. Mil. R. Evid. 304(a), 304(c)(3).

"Article 31(b) contains four textual predicates. First, the article applies to persons subject to the UCMJ. Second and third, the article applies to interrogation or requests for any statements from 'an accused or a person suspected of an offense.'[2] Fourth, the right extends to statements regarding the offense(s) of which the person questioned is accused or suspected." *United States v. Cohen,* 63 M.J. 45, 49 (C.A.A.F. 2006). Not all questions posed to suspects fall under the protection of Article 31(b), UCMJ. "[W]here the questioner is not acting in a law enforcement or disciplinary capacity, rights warnings are generally not required." *Id*. at 59-50; *United States v. Duga*, 10 M.J. 206, 210 (C.M.A. 1981). Questions "focused solely on the accomplishment of an operational mission" are one example of this. *Cohen*, 63 M.J. at 49. However, if the questioner is performing official law enforcement or disciplinary functions and he suspects the person being questioned of an offense, an Article 31, UCMJ, warning is required. *Id*. When the questioning is done by a

---

[2] We assume without deciding that appellant was a suspect of some unspecified offense for purposes of Article 31(b), UCMJ. Resolution of that issue is unnecessary in light of our findings.

military supervisor in the suspect's chain of command, the government must rebut a strong presumption that such questioning was done for disciplinary purposes. *United States v. Loukas*, 29 M.J 385, 389 (C.M.A. 1990). Evidence that the primary purpose of the questioning is "administrative [or] operational" may overcome the presumption that "a superior in the immediate chain of command is acting in an investigatory or disciplinary role" when questioning a subordinate about misconduct. *United States v. Bradley*, 51 M.J. 437, 441 (C.A.A.F. 1999). Whether the questioner is acting in a law enforcement or disciplinary capacity and the individual's perception of the nature of the questioning are evaluated objectively in light of all the facts and circumstances. *United States v. Good*, 32 MJ 105, 108 (C.M.A. 1991); *Cohen*, 63 M.J. at 50.

Interrogation "includes any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning." Military Rule of Evidence [hereinafter Mil. R. Evid.] 305(b)(2); *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). This rule was broadly fashioned "to thwart 'attempts to circumvent warnings requirements through subtle conversations.'" *United States v. Ruiz,* 54 M.J. 138, 141 (C.A.A.F. 2000) (quoting S. Saltzberg et al., Military Rules of Evidence Manual 225 (4th ed. 1997)). Furthermore, "interrogation involves more than merely putting questions to an individual." *Id.* In *Innis*, the Supreme Court examined the issue of what constitutes an "interrogation." 446 U.S. at 298. First, interrogation must "reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300. Interrogation consists only of express questioning or actions that are reasonably likely to elicit an incriminating response. *Id.* at 301. "In each instance, the question will be whether an incriminating response is sought or is the reasonable consequence of the comment or remark." *United States v. Traum*, 60 M.J. 226, 229 (C.A.A.F. 2004). This typically includes direct questions seeking incriminating information but may also include "psychological ploys" such as minimization, attempts to confuse or manipulate the person being questioned. *Innis*, 446 U.S. at 299.

## DISCUSSION

The military judge's factual findings are not clearly erroneous and are amply supported by the evidence. Assessing all of the facts and circumstances surrounding 1SG ML's statement to appellant, we find that 1SG ML was not acting in an official law enforcement or disciplinary capacity when he made his statement to appellant. Additionally, we further find that 1SG ML's statement to appellant did not amount to an interrogation or request for a statement about a suspected offense under Article 31(b), UCMJ. Rather, the statement at issue amounted to a broad offer of support to a subordinate soldier in furtherance of 1SG ML's legitimate responsibilities of ensuring the health, welfare, and morale of his soldiers. *See Bradley*, 51 M.J. at 437 (evidence that the primary purpose of the questioning is administrative or operational may overcome the presumption that "a superior in the immediate chain

4

of command is acting in an investigatory or disciplinary role"). Under the facts of this case, the strong presumption that 1SG ML was acting in an official law enforcement or disciplinary role because of his superior rank, has been overcome. The military judge did not abuse his discretion in denying the defense motion to suppress appellant's statements to 1SG ML.

Our superior court has interpreted Article 31(b), UCMJ, in a manner that recognizes the difference between questioning focused on operational and administrative matters and questioning intended to elicit information for use in disciplinary proceedings. *Cohen*, 63 M.J. at 50; *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000). The broad responsibilities of a first sergeant include maintaining the health, welfare, morale, and good order and discipline of subordinate soldiers. Soldiers facing a criminal investigation or pending criminal charges have any number of subjects to discuss with their command which do not require a recitation or admission of offense specific facts for resolution. Subjects such as future living arrangements, support obligations, available support resources, and the career ramifications of an investigation are just some of such administrative issues. Here, the evidence establishes, both subjectively and objectively, that at the time of the 1SG's statement to appellant, he was not engaged in a law enforcement or disciplinary role, but was acting solely to ensure the morale, safety, and welfare of a subordinate soldier.

First, the entirety of the exchange between 1SG ML and appellant establishes that both knew CID was the entity conducting the criminal investigation and that appellant was going to CID to be questioned about the allegations. First Sergeant ML was not the investigator. Second, both statements made by 1SG ML in his office pertain to appellant's well-being. First Sergeant ML specifically inquired as to how appellant was doing, after observing him visibly upset, and then he essentially informed appellant he was available to listen if needed. Third, the brief nature of the exchange, the lack of specificity in the offer of support, and the absence of follow-on statements or questions demonstrate that 1SG ML was not acting in a law enforcement or disciplinary capacity. *Cf. Cohen*, 36 M.J. at 48 (questioner admitted his inquiry went farther than necessary when he asked appellant if he was involved in negative behavior which would prevent him from going on leave); *Swift*, 53 M.J. at 443 (after confronting appellant with evidence of bigamy, questioner asked appellant to "explain his side of the story."); *Good*, 32 M.J. at 107 (suspecting appellant of committing larceny, questioner asked appellant about the location of the missing checks). Lastly, appellant's response to 1SG ML was an appreciative "thank you," which effectively ended the conversation until such time, if ever, appellant desired to speak to 1SG ML.

Additionally, the record is devoid of any evidence that 1SG ML's statement was a pretext for law enforcement or disciplinary purposes. The military judge found 1SG ML's testimony that his statement was "motivated by a genuine attempt

5

to provide moral support for a soldier under his supervision" to be credible. The record amply supports this finding and we agree with it. First Sergeant ML's statement went no further than what was required to fulfill his administrative duties and cannot reasonably be interpreted, under the totality of the circumstances, as a means to deprive appellant of his codal or constitutional rights. *See Bradley*, 51 M.J. at 437; *Loukas*, 29 M.J at 389. *Cf. Cohen,* 63 M.J. at 51-52.

We further find that neither 1SG ML's statement in the office, nor his exclamation "what" in the truck, amount to an interrogation or a request for information pursuant to Article 31(b), UCMJ. To constitute an interrogation, an incriminating response must either be sought or is a reasonable consequence of such questioning. Mil. R. Evid. 305(b)(2). The general nature of 1SG ML's statement did not require an immediate response or any response at all. It was a broad offer of future support to which appellant, a senior non-commissioned officer (NCO), responded with an appreciative and conclusory "thank you." Appellant followed this with silence, a silence that continued unchallenged as the office setting was left behind. Appellant's conduct evinces his understanding that an incriminating response was not called for by 1SG ML's statement and indicates the measure of compulsion required for an interrogation did not exist in this case. We conclude that an incriminating response was neither sought nor the reasonable consequence of 1SG ML's comment. *See Traum*, 60 M.J. at 229. Looking at the facts and circumstances in this case, we agree with the military judge's finding that 1SG ML's statement did not amount to an interrogation or a request for a statement under Article 31, UCMJ.

**CONCLUSION**

On consideration of the entire record, the submissions of the parties, those matters personally raised by appellant pursuant to *Grostefon*, 12 M.J. at 431, and oral argument, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Chief Judge BURCH and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court